Van Voorhis, J. (dissenting).
The alteration of the boundary lines of wards so as to change the constituencies from which members of the Erie County Board of Supervisors are elected from within the City of Buffalo has nothing to do with the property, affairs or government of the city as a municipal corporation. Even in the case of redistricting for the selection of City Councilmen, the court did not rely on that grant of power to cities (Bareham v. City of Rochester, 246 N. Y. 140). Local Law No. 1 of 1959 of the City of Buffalo could have been adopted only under the powers granted to cities by the second sentence of the Home Buie Amendment to the Constitution (N. Y. Const., art. IX, § 12) to adopt local legislation relating to 1 ‘ the powers, duties, qualifications, number, mode of selection and removal, terms of office and compensation ” of aE officers and employees of the city. That is the grant of power which was held to enable the redistricting of the City of Bochester for the purpose of electing City Councilmen in the Bareham case. “Mode of selection”, italicized at page 146 of the Bareham opinion, was held to be a broader term than merely designating whether city officers should be appointed or elected, and was held to have extended to the establishment of the constituencies of the City Councilmen. The very power, however, which was granted to cities to adopt local legislation establishing the constituencies of City Councilmen has been denied by the Constitution to cities when it comes to the selection of members of the governing elective body of the county in which the city is contained. This limitation was added to the Constitution at the 1938 Convention, so as to insure that the powers exercisable by a city in relation to the mode of selection of its City Councilmen could not be extended so as to determine the number, term of office, quaEfications or constituencies of members of the County Board of Supervisors who are elected from within the city. There is no legal neces *177 sity that the City Councilmen and Supervisors shall be elected from the same areas within the city.
In reviewing the orders appealed from, it is necessary to take one of three positions: (1) that the power to determine ward boundaries so as to establish the constituencies of members of the Board of Supervisors of Erie County pertains or does not pertain to the property, affairs or government of the City of Buffalo; (2) that the realignment of the wards constitutes an exercise of the power to determine the ‘‘ mode of selection ’ ’ of Supervisors chosen from within the city, or (3) that changing the ward boundaries does not pertain to the “ mode of selection ” of Supervisors. This revision of wards in order to change the constituencies of Supervisors has nothing to do with the property or affairs of Buffalo as a unit of government. It concerns the government of the county not the city. If the power to change the constituencies by which Supervisors are elected pertains to the “ mode of selection ” of Supervisors, it is expressly forbidden to be exercised by the city by this limitation incorporated into the Home Rule Amendment in 1938. If it does not pertain to the ‘ ‘ mode of selection ’ ’ of Supervisors, then the power to change ward boundaries has not been granted to the city, and remains in the Legislature. Section 12 of article IX of the Constitution makes clear that in either instance it was intended to remain in the Legislature, so as not to offer an inducement to city administrations to revise constituencies of Supervisors while they are in power and have the opportunity.
For the reasons stated by Mr. Justice Noonan at the Erie County Special Term, I dissent and vote to affirm in the above-entitled action and special proceeding.
Chief Judge Conway and Judges Desmond, Dye, Fuld and Froessel concur with Judge Burke; Judge Van Voorhis dissents and votes to affirm in a separate opinion.
Judgment and order reversed, without costs, and Local Law No. 1 and Local Law No. 2 declared valid and not subject to referendum.